**UNITED STATES of America, Appellee,**

v.

**Hubert Lavone CLINTON, Appellant.**

**No. 83–1140.**

United States Court of Appeals, Eighth Circuit.

Submitted June 28, 1983.

Decided July 11, 1983.

Richard C. Turner, U.S. Atty., Robert C. Dopf, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

John Malvik, Braud, Warner, Neppl & Westensee Ltd., Rock Island, Ill., for appellant.

1. The Honorable William C. Stuart, Chief Judge of the United States District Court for the Southern District of Iowa.

2. On June 25, 1981 Clinton purchased $500 worth of food stamps from Guerrero, paying

Before HEANEY, BRIGHT and FAGG, Circuit Judges.

PER CURIAM.

Hubert Lavone Clinton appeals from the district court's [1] judgment entered pursuant to a jury verdict finding Clinton guilty on three counts of unauthorized acquisition and possession of food stamp coupons having a value in excess of $100 in violation of 7 U.S.C. § 2024(b)(1) (Supp. V. 1981). The court sentenced Clinton to three concurrent terms of two years' probation with the condition that he make restitution to the United States in the amount of $1,750. We affirm.

I. *Background*

On June 5, 1981, Raul Guerrero, Special Agent of the United States Department of Agriculture, met with Clinton at Clinton's place of business, Kong's Stock Market Bar, in Davenport, Iowa. Guerrero told Clinton that he had food stamps to sell. The two men discussed price, and Guerrero left a $50 book of stamps with Clinton. On three subsequent occasions, Clinton purchased over a hundred dollars worth of food stamps from Guerrero.[2]

At trial, Clinton admitted making the three purchases, but raised the defense of entrapment. The jury found Clinton guilty on all three counts. Following the district court's denial of Clinton's posttrial motion to vacate the jury's verdict, Clinton brought this appeal.

II. *Discussion.*

Clinton contends on appeal that the district court committed prejudicial error in failing to grant a mistrial at several points during the course of the trial. First, Clinton argues that prosecutorial misconduct prejudiced the jury and denied him a fair trial. This allegation centers on a question

$200. On September 18, 1981, Clinton purchased $1,500 worth of food stamps from Guerrero, paying $600. Finally, on January 26, 1982 Clinton purchased $1,000 worth of food stamps for $450.

the prosecutor asked Special Agent Guerrero:

[Prosecutor]: Now, Agent Guerrero, did you have—receive information from which you had reason to believe that Hubert Clinton might be involved in—

At this point, Clinton's attorney objected to the prosecutor's question. The district court sustained defense counsel's objection, but denied a motion for mistrial in the following exchange:

[Defense attorney]: Object to this and ask—

The Court: The objection is sustained.

[Defense attorney]: —and ask for a mistrial. That's right out of the mouth of the prosecutor. It's highly improper, prejudicial. I don't see how the Defendant can possibly get a fair trial now.

The Court: The objection is sustained, and the Jury will be instructed to disregard the question that was in the process of being posed. And the motion for mistrial will be denied.

Clinton argues that the prosecutor's question tainted the jury's consideration implying that Clinton had previously been involved in food stamp trafficking. We disagree.

▇ The district court has broad discretion in determining whether an improper question has so tainted the trial as to require a mistrial. *United States v. Elliott,* 674 F.2d 754, 755 (8th Cir.1982). In the instant case, the question, which the Government concedes to have been improper, occurred early in the trial, immediately after Guerrero had explained in general terms the Government's efforts to investigate the misuse of food stamps. The prosecutor's question represented an inartful attempt to narrow the inquiry to Clinton's specific acts. The prosecutor never completed the question, and Guerrero never answered. Given all these factors, and given the strength of the Government's case against the defendant, we conclude the district court did not abuse its discretion in denying Clinton's motion for mistrial.

Clinton's remaining allegations of error also arise from Special Agent Guerrero's testimony. Guerrero testified about the meeting at which Clinton made his first purchase of food stamps as follows:

[Prosecutor]: Did Mr. Clinton then travel to the Clayton House and meet with you?

[Guerrero]: Yes, sir. He arrived approximately around 1800 hours, which is around 6:00 p.m., that afternoon. He entered the Why-Not Bar, and he was accompanied by a white female who he identified to me as Kathy.

[Prosecutor]: Did you have a conversation with Mr. Clinton?

[Guerrero]: Yes, I did.

[Prosecutor]: What was the nature of that conversation?

[Guerrero]: ... He says, "I'm kind of in a hurry. I've got business. I've got to take Kathy to a business appointment." I said, "Oh, that's fine." He said, "I'm kind of in a hurry." ...

In addition, Guerreno later testified about Clinton's third purchase of food stamps:

[Prosecutor]: Was there any other conversation or discussion?

[Guerrero]: He asked me what else I'd be interested in, if I would be interested in some property. I said, "What kind of property?"

[Defense attorney]: I'm going to object to this and, again, about Clinton's third purchase of food stamps:

[Prosecutor]: Was there any other conversation or discussion?

[Guerrero]: He asked me what else I'd be interested in, if I would be interested in some property. I said, "What kind of property?"

[Defense attorney]: I'm going to object to this and, again, I'm going to ask for a mistrial. It's irrelevant to these charges. The prosecutor knows better; if he doesn't know better, then he ought to be taught better.

All he's trying to do is prejudice the defendant, and this evidence is—

The Court: The question has, so far—Unless you put it in, Mr. Malvik,

[Defense attorney]: the question so far doesn't give the Court any indication.

The Court: Counsel, approach the bench, please.

Clinton contends that these statements constitute inadmissible evidence of other crimes. He alleges that the first incident points a picture of him as "a law-breaking stereotypical black man pimping for his white prostitute," and that the second incident implies that he traffics in stolen property.

The district court concluded that the testimony, while extraneous, was not so prejudicial as to justify a mistrial. We agree, and conclude that the district court did not abuse its discretion in denying Clinton's motions for mistrial. Depending on the demeanor and voice inflection of the witness, both incidents involved testimony subject to varying interpretations. The district court was in the best position to determine prejudicial impact, if any. *United States v. Elliott, supra,* 674 F.2d at 755.

III. *Conclusion.*

Accordingly, we affirm the judgment of the district court.