UNITED STATES of America, Appellee,

v.

H. Wesley ROBINSON, Leo W. Wilson, and Irwin W. Milliken, Appellants.

Nos. 84–1939, 84–1940 and 84–1948.

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1985.

Decided Sept. 30, 1985.

Rehearing Denied Oct. 31, 1985 in Nos. 84–1939 and 84–1940.

Ann Fitzgibbons, and David Shinkle, Des Moines, Iowa, John L. Timmons, Ames, Iowa, for appellants.

Robert C. Dopf, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

H. Wesley Robinson, Irwin W. Milliken, and Leo W. Wilson appeal from a final judgment entered by the district court[1] on a jury verdict finding them each guilty of mail fraud in violation of 18 U.S.C. § 1341. Robinson and Wilson were found guilty on each of the fifteen counts of mail fraud with which they were charged, while Milliken was found guilty on each of the nine counts with which he was charged. Each of the fifteen indictment counts refers to a separate loan applicant. The district court sentenced Robinson to three years in prison on each of counts 1 through 7 of the indictment, and to five years probation for each of counts 8 through 15 of the indictment, all of these sentences to run concurrently. The court sentenced Wilson to one year and one day in prison on each of counts 1 through 7, and to five years probation on counts 8 through 15, again with these sentences to run concurrently. The court sentenced Milliken to one year and one day in prison on each of counts 7 through 11, and to five years probation on each of counts 12 through 15, all to run concurrently. For reversal the appellants make many allegations of error; not all appellants join in each argument. Finding none of appellants' arguments to be of merit, we affirm the judgment of the district court.

## I. BACKGROUND

Harley S. Troutman and James G. Liverca were originally indicted along with Robinson, Milliken, and Wilson. Troutman died prior to trial and was thus dismissed as a defendant. Because Liverca had agreed to cooperate with the investigation and testify in exchange for a plea of guilty to a single count of mail fraud, the Government moved to sever Liverca from the other defendants. The court granted the motion to sever and accordingly set Liverca's trial date for June 18, 1984, three weeks after Robinson's, Milliken's, and Wilson's trial was to begin. On June 15, 1984, however, following the jury's return of guilty verdicts against Robinson, Milliken, and Wilson, the Government moved to dismiss the indictment against Liverca citing the absence of criminal intent on his part. The court granted the motion and dismissed the charges against Liverca on July 2, 1984.

The indictment charged appellants with knowingly participating in a scheme or artifice to defraud. Under this scheme, potential borrowers were informed that foreign —European, Middle Eastern, and Mexican—sources were seeking to make enormous amounts of money available to American investors. Because of international legal restrictions, however, the sources could not lend the money directly to American corporations. Instead, the loans would be made to individuals, who would serve as conduits. The individuals could obtain collateral security agreements, through the help of the appellants, from major Ameri-

---

1. The Honorable Harold D. Vietor, Chief Judge for the United States District Court for the Southern District of Iowa.

can corporations. The collateral security agreement would be the corporation's guarantee to pay the principal and interest on the loans. The individual would benefit by receiving a commission for his role as the nominal borrower. The individual would not be responsible for paying the money back, and at most would have to pay a gift tax.

The roles of the individual defendants in the scheme varied. Robinson was basically the "mastermind" behind the scam, having originated the idea and recruited the other players. Robinson represented himself to the other defendants to be an investment banker and financial counselor, experienced in international loan placement. He initially described the "over-borrow" concept to Troutman and Liverca, who in turn promoted the plan to others, including Wilson, through a corporation named T–Plex, Inc. Robinson received an advance fee of $3,500 for each application that Troutman and Liverca submitted to him. Robinson in turn "kicked back" $1,000 of each advance fee to Troutman and Liverca.

Wilson first learned of the loan-finding scheme through Troutman and Liverca, and thereafter promoted the scheme in meetings with prospective borrowers. When a prospective borrower actually applied for a loan, Wilson would help him fill out the necessary papers, and would collect the $3,500 fee to be forwarded through Troutman and Liverca to Robinson. Wilson later began charging $1,000 per application for his own services.

Milliken was first told of the loan-finding plan by Wilson. Wilson informed clients of his accounting and bookkeeping service that he could, for a fee, direct them to people who could arrange enormous international loans. Milliken charged applicants first $1,000 and then $1,500 for introducing them to Wilson.

Between June 1980 and mid-August 1980, over 100 people paid various fees to appellants ranging from $3,500 to over $12,000 each. All together, appellants received over $720,000 in fees during this time period. No loans were ever obtained.

## II. DENIAL OF MOTION TO SEVER

We address first Robinson's and then Milliken's arguments that the district court erred in denying their individual motions to sever, made prior to and during their trial. Robinson and Milliken do not claim that their initial joinder was impermissible under Fed.R.Crim.P. 8(b) [2], but instead assert that the prejudice resulting from the joinder mandated severance under Fed.R. Crim.P. 14.[3] Specifically, Robinson alleges that the admission of certain evidence, which if he had been tried alone would not have been admissible, prejudiced his case. The evidence about which Robinson is concerned consists of his conviction for mail fraud in federal district court in Ohio and his suspension from the Ohio Bar Association. Although the district court originally ruled *in limine* that the conviction and the suspension were inadmissible, it later ruled that the Ohio conviction would be admissible. Robinson argues that the license suspension was impermissibly admitted when Milliken's defense counsel conducted cross-examination of Tam Ormiston, Assistant Attorney General of Iowa.

We think Robinson's severance argument is without merit. Generally, persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be jointly tried. *See, e.g., United States v. Bostic,* 713 F.2d 401,

---

**2.** Fed.R.Crim.P. 8(b) reads:

*Joinder of Defendants.* Two or more defendants may be charged in the same indictment * * * if they are alleged to have participated in the same * * * acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately. and all of the defendants need not be charged in each count.

**3.** Fed.R.Crim.P. 14 reads:

*Relief from Prejudicial Joinder.* If it appears that a defendant or the Government is prejudiced by a joinder of * * * defendants in an indictment * * * or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

403 (8th Cir.1983) (quoting *United States v. Jackson*, 549 F.2d 517, 523 (8th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977)); *United States v. Phillips*, 607 F.2d 808, 810 (8th Cir.1979). This court has repeatedly held that a motion to sever is addressed to the sound discretion of the district court, and a denial of severance is not grounds for reversal unless great prejudice and an abuse of discretion are shown. *United States v. Nabors*, 762 F.2d 642, 651 (8th Cir.1985); *United States v. Miller*, 725 F.2d 462, 467 (8th Cir.1984) (citing *United States v. Burchinal*, 657 F.2d 985, 994–95 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981)). *See also United States v. Brim*, 630 F.2d 1307, 1310 (8th Cir.1980), *cert. denied*, 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981); *United States v. Swarek*, 656 F.2d 331, 337 n. 4 (8th Cir.), *cert. denied*, 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981); *United States v. Boyd*, 610 F.2d 521, 525 (8th Cir.1979), *cert. denied*, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980).

■■■ An individual defendant shoulders a heavy burden in trying to establish that the denial of a severance motion was an abuse of the district court's discretion. *United States v. Graham*, 548 F.2d 1302, 1310–11 (8th Cir.1977). Robinson falls far short of carrying such a burden here. The district court ultimately ruled that evidence of Robinson's Ohio conviction was admissible under Fed.R.Evid. 404(b) *against Robinson*, as proof of plan, knowledge, absence of mistake, and preparation. As such, the conviction also would have been admissible in a separate trial of Robinson, and thus the admission of the conviction in the joint trial could not have rendered the joinder prejudicial to Robinson. As for the license suspension, Robinson errs in contending that this evidence was brought out by Milliken's defense counsel on cross-examination of Ormiston. The suspension was not mentioned; indeed, the district court reiterated its ruling that the license suspension could not be brought up at all.

In support of his argument that his motions to sever were erroneously denied, Milliken proffers more reasons than does Robinson, all of which we find equally meritless. Milliken argues variously that: 1) evidence of other crimes and bad acts of his co-defendants, which was not admissible against Milliken, prejudiced his case; 2) evidence of crimes and bad acts of his co-defendants performed subsequent to the time period in the indictment heightened the chance of jury confusion and prejudice to Milliken; 3) Robinson's failure to testify prevented Milliken from exercising his constitutional right to confrontation with regard to Robinson's prior conviction and his other crimes and bad acts; 4) the "confession" by Liverca as to his plea bargain and his intent to plead guilty to one of the fifteen counts prejudiced Milliken; 5) evidence of inculpatory statements made by Robinson and Wilson, which would not have been admissible against Milliken alone, prejudiced Milliken; 6) the existence of antagonistic defenses among the defendants warranted severance; 7) Milliken was charged with only nine of the fifteen counts against his co-defendants, and thus had to "absorb the taint" of the evidence as to the remaining counts; 8) the amount and complexity of the evidence at trial rendered it difficult for the jury to separate the evidence as to the individual defendants, even with the aid of cautionary instructions; 9) the cumulative evidence as to the involvement of his co-defendants greatly overshadowed the evidence as to Milliken's participation; and 10) the district court relied too heavily on the use of cautionary instructions to aid the jury in compartmentalizing the evidence, using such instructions at least twenty-five times.

■■■ We hold that the district court did not abuse its discretion in denying Milliken's motions to sever, and that Milliken was not prejudiced by the joinder. The roles of the individual defendants in the loan promotion scheme were sufficiently distinct that the jury, aided by the court's cautionary instructions, could compartmentalize the evidence against each defendant. The "other crimes" and bad acts evidence

that was admitted against Wilson or Robinson only was accompanied by the court's instructions to the jury that the evidence was not to be considered against Milliken. Further, that evidence is admissible as to one defendant but not as to his co-defendants does not alone require severance. *United States v. Reeves*, 674 F.2d 739, 746 (8th Cir.1982); *United States v. Knife*, 592 F.2d 472, 480 (8th Cir.1979). And, evidence of prior criminal offenses of one defendant does not prejudice his co-defendants to the level requiring severance. *United States v. McClure*, 734 F.2d 484, 492 (10th Cir. 1984); *United States v. Salomon*, 609 F.2d 1172, 1175 (5th Cir.1980). Nor is a defendant entitled to a severance merely because the evidence against a co-defendant is more damaging than against him. *Boyd*, 610 F.2d at 525.

■ As for Milliken's argument that Robinson's failure to testify prejudiced him, it "'is not reversible error to deny severance requested on the ground that a defendant wants to call a co-defendant as a witness, unless the defendant shows that the co-defendant is likely to testify at a separate trial and the testimony would exculpate him.'" *United States v. DeLuna*, 763 F.2d 897, 920 (8th Cir.1985) (quoting *United States v. Starr*, 584 F.2d 235, 239 (8th Cir.1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979)). *See also Graham*, 548 F.2d at 1311–12. Milliken makes no attempt to meet either requirement. In addition, Robinson could have chosen to invoke his Fifth Amendment right whether at his own trial or at Milliken's.

Further, the testimony of Liverca, about which Milliken complains, was not a "confession" as Milliken asserts, but rather an explanation of his plea agreement. Liverca mentioned the plea agreement and his intention to plead guilty to a felony only upon cross-examination by Wilson's defense counsel. Liverca did not testify as to any dealings with Milliken, and thus did not

contradict Milliken's testimony. Also, the court instructed the jury that it could consider the plea agreement only in evaluating Liverca's credibility, and not as evidence of the guilt of any of the defendants. In light of the circumstances it is difficult to see how Milliken could have been prejudiced by Liverca's testimony.[4]

The allegedly inculpatory statements made by Robinson and Wilson, the admission of which Milliken complains about, consist of their representations to prospective borrowers that some over-borrow loans had already closed. The statements made by Robinson were admitted with a limiting instruction to the jury, cautioning them to consider this evidence against Robinson only. Some of the representations made by Wilson were made in the presence of Milliken, and as such are as incriminating against Milliken as against Wilson. Milliken cites several cases for the proposition that the presentation into evidence of incriminating out-of-court declarations made by a defendant, which are not admissible against his co-defendants, mandates severance. These cases, however, are distinguishable from the situation here as they involve outright confessions by defendants, or at least admissions of criminal activity, which also directly implicate their co-defendants. In sum, Milliken has failed to establish the great prejudice to his case necessary to reverse a denial of severance.

■ Milliken's remaining objections to the denial of severance can be dealt with summarily. In arguing that the antagonism between his and Robinson's defenses mandated severance, Milliken failed to make the required showing that the conflict between the defenses was "'so prejudicial that the differences [were] irreconcilable.'" *United States v. Singer*, 687 F.2d 1135, 1146 (8th Cir.1982) (quoting *Boyd*, 610 F.2d at 526), *rev'd on other grounds*, 710 F.2d 431 (8th Cir.1983). That Milliken is not named in six of the fifteen counts does not require severance; Fed.R.Crim.P.

**4.** The effect of Liverca's testimony and the subsequent dismissal of charges against him is considered more fully in Section IV of this opinion.

8(b) expressly states that defendants may be joined even if all of the defendants are not charged in each count. The cases cited by Milliken, in which severance was granted when a defendant was not named in all the counts, all involved a much greater potential for jury confusion in terms of the number of counts charged, the number of defendants joined, and the variation among the counts as to which defendants were charged in each. Likewise, that the evidence against Robinson and Wilson may have been more damaging than the evidence against Milliken does not warrant severance. *See Boyd*, 610 F.2d at 525 (quoting *Jackson*, 549 F.2d at 525). Because none of Milliken's arguments individually or collectively establish an abuse of the district court's discretion on the great level of prejudice necessary to reverse a denial of severance, we affirm the district court's denial of Milliken's motions for severance.

## III. DENIAL OF ROBINSON'S MOTION TO DISMISS BASED ON ALLEGED VIOLATION OF PLEA AGREEMENT

Robinson next argues that the district court erred in failing to grant his motion to dismiss the indictment, because the Government violated the terms of a plea agreement he signed in the Southern District of Ohio on October 26, 1983. Robinson alleges that the agreement precluded the Government from prosecuting him in any other jurisdiction, and thus the Government violated the agreement by indicting him in the Southern District of Iowa. Robinson further argues that the United States Attorney's Office in Ohio turned over evidence obtained through the plea negotiations to the United States Attorney's Office for the Southern District of Iowa, violating the agreement and Fed.R.Crim.P. 11(e)(6).

■ We hold that the district court correctly denied Robinson's motion to dismiss. Paragraph seven of the October 26 plea agreement, which Robinson signed and testified that he had read in full, states: "Defendant H. Wesley Robinson expressly understands that this Agreement applies only to the Indictment filed in this particular case in the Southern District of Ohio and that it does not relate or apply to any other Judicial District of the United States." Thus this case is readily distinguishable from *United States v. Carter*, 454 F.2d 426 (4th Cir.1972), which Robinson cites in support of the proposition that a promise in a plea negotiation is binding in all jurisdictions. What the Fourth Circuit actually held in *Carter* was that if the Government had actually promised the defendant that he would not be prosecuted anywhere else if he cooperated in an investigation in the District of Columbia, the Government would be obliged to abide by that promise. Here, however, the Government did not breach its promise to Robinson by indicting him in Iowa; the plea agreement was specifically limited by its terms to the Southern District of Ohio. Robinson contends that because his performance of the plea agreement included restitution to clients who lived in many jurisdictions outside Ohio, the agreement became "multi-jurisdictional," so that the Government's promise not to prosecute Robinson should be expanded multi-jurisdictionally. This contention is specious. The clients to whom Robinson agreed to make restitution, although they were not all residents of Ohio or named in the indictment against Robinson, were all victims of the fraud scheme charged in the Ohio indictment.

As for Robinson's contention that evidence obtained through his cooperation with the United States Attorney in Ohio was used against him in the proceedings in Iowa, he makes only vague allegations, without any substantive proof, that such evidence was used against him in Iowa. In an affidavit in support of the Government's resistance to the motion to dismiss, the Assistant United States Attorney for the Southern District of Iowa, Robert C. Dopf, stated that any evidence presented to the grand jury in that district concerning Robinson was based on testimony of witnesses from the district who had had personal contact with Robinson, or from an investigation by the local FBI office and the Iowa

Attorney General's office. Dopf further swore that the grand jury received no evidence that originated directly or indirectly from plea negotiations in any other jurisdiction, or from a search conducted by federal authorities on Robinson's offices in California. The line of cases Robinson cites, beginning with *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), as stating that the Government bears the burden of proving that evidence used against a defendant was derived from a legitimate source and independent of the defendant's compelled testimony are inapposite. These cases deal with the statutory grant of use immunity under 18 U.S.C. § 6002, which is not involved here. In sum, the district court did not err in denying Robinson's motion to dismiss.

## IV. DENIAL OF APPELLANTS' MOTIONS FOR NEW TRIAL BASED ON GOVERNMENT'S DISMISSAL OF CHARGES AGAINST LIVERCA

The next allegation of error, in which Robinson, Wilson, and Milliken all join, centers on the Government's dismissal of charges against Liverca following the joint trial of the appellants. Liverca entered a plea bargaining agreement with the United States Attorney's Office in late 1980 or early 1981, by which he agreed to cooperate fully with law enforcement authorities. In return, the Government agreed to accept Liverca's guilty plea to a single count of mail fraud. Thereafter Liverca did cooperate fully with the Government, providing extensive testimony by deposition, turning over documents, and testifying before the grand jury. The grand jury subsequently indicted Liverca along with all of the other defendants on all fifteen counts of the indictment. On January 13, 1983, the day of Liverca's formal arraignment, Liverca's attorney Don Nickerson, approached Assistant Attorney Robert C. Dopf and told Dopf he felt the charges against Liverca should be completely dismissed. Dopf testified that he responded to Nickerson by saying:

> I have some questions myself. I'm certainly not in a position to make a determination at this point. Indeed his deal is cut. That's his deal. I have a duty if I think it is not proper at any point in the process, to reexamine it. I might do that, but specifically, I'm not promising to do that. I'm not making any representations to you. I won't even agree to reevaluate it much less change the deal.

In February 1984, the district court granted the Government's motions to sever Liverca from the other defendants, and to continue Liverca's trial date to June 18, 1984. On May 29, the trial of Robinson, Wilson, and Milliken began. At trial, Liverca testified and in response to Wilson's defense counsel's questioning, mentioned his plea agreement and his intent to plead guilty to a felony. The jury returned its verdict on Thursday, June 14. On Friday, June 15, three days before Liverca's trial or plea was scheduled to take place, the Government filed a motion to dismiss the charges against Liverca, on the ground that he lacked the requisite criminal intent. The court granted the request after ordering two amendments to the motion. The defendants filed a joint motion for a new trial, and a hearing was held on July 12, 1984. After the hearing, the court denied the new trial motion, making the following findings of fact: 1) that the decision to dismiss Liverca was made following the trial; 2) that no promise or agreement to dismiss charges or reevaluate the plea agreement was ever made to Liverca or his attorney; and 3) that Liverca's testimony at trial concerning the plea agreement was completely true and accurate.

The appellants argue that the district court erred in denying their motion for a new trial. They contend that they were prejudiced by the Government's failure to disclose the possibility of dismissal of the charges against Liverca because had they known of such a possibility, they would have changed their trial strategy accordingly. Specifically, appellants contend that they could have told the jury that just as Liverca acted without criminal intent, they likewise conducted activities similar to Liverca's without criminal intent. Robinson contends that the failure to disclose the

possibility of dismissal was in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused who requests it violates due process. Further, appellants allege that the Government had all of the information it needed to make the dismissal decision before their trial, and that by waiting until after trial to dismiss Liverca, the Government allowed the jury to hear about Liverca's plan to admit his criminal intent, by pleading guilty, in doing substantially the same things the appellants were standing trial for having done.

After carefully reviewing the record and particularly the district court's ruling on the new trial motion, we conclude that no reversible error exists and that appellants were not denied a fair trial. The district court's findings of fact that Dopf made no promises to Liverca or his attorney to dismiss charges or reevaluate the plea agreement, that Liverca's trial testimony regarding the plea agreement was true and accurate, and that the dismissal decision was made after trial are not clearly erroneous. *See United States. v. Jones*, 759 F.2d 633, 637 n. 3 (8th Cir.1985) (district court's findings are entitled to great deference and may not be rejected unless clearly erroneous). The district court found credible Dopf's testimony that his concerns as to Liverca's testimony heightened during trial preparation and at trial, and that he chose to wait until after the trial to make his decision so he could benefit from any knowledge he gained from the evidence presented at trial, particularly the testimony of the defense witnesses and Liverca's own demeanor. Although Dopf admitted in his final amended motion to dismiss Liverca that the factors on which his decision to dismiss was ultimately based were all known to him prior to appellants' trial, it is not inconceivable that some new facts could have come out at trial, for example, through the testimony of Milliken or Wilson, which could have tipped the scales one way or the other. Further, a prosecutor has the continuing duty to evaluate the sufficiency of the evidence as to the guilt of a defendant, and he must dismiss a defendant as soon as he determines that such evidence is insufficient to sustain a conviction. *See, e.g., United States v. Weber*, 721 F.2d 266, 268 (9th Cir.1983); *United States v. DeLucca*, 630 F.2d 294, 298 (5th Cir.1980), *cert. denied*, 450 U.S. 983, 101 S.Ct. 1520, 67 L.Ed.2d 819 (1981). Finally, a sufficient difference seems to exist between the conduct of Liverca and the conduct of appellants to warrant Dopf's determination that Liverca lacked the requisite criminal intent to continue to press the charges against him.[5] For these reasons we cannot conclude that Dopf acted other than in good faith in seeking dismissal of the indictment against Liverca.

Appellants contend that, notwithstanding the good faith on the part of Dopf, the failure to disclose to them the possibility of dismissal prejudiced their rights to a fair trial. Although we acknowledge that some prejudice undoubtedly resulted from the Government's delay in seeking dismissal of Liverca, we conclude that such prejudice did not rise to the level of reversible error. As we pointed out

---

**5.** In its amended motion to dismiss dated June 19, 1984, the Government lists the following factors among those considered in determining to dismiss Liverca: that Liverca was not warned that Robinson was under investigation in Ohio, and that he had been involved with similar loan-finding schemes in the past without ever obtaining a loan; that Liverca repeatedly requested Wilson in early June, 1980, to stop submitting additional loan applications; that Troutman severed his relationship with Liverca in late June or early July 1980, and Liverca was not thereafter involved with the solicitation of further funds for T–Plex, Inc.; that Liverca was not aware that additional fees were being solicited on behalf of T–Plex until after the fact; that Liverca did not know at the time that Milliken and Wilson were soliciting and accepting advance fees in addition to that requested by Robinson; and that Liverca did not cash the final kickback check to him for $9,500, and also voluntarily repaid funds conveyed to him earlier.

above, the district court found that Liverca's trial testimony as to his plea agreement was true and accurate, and that no promise had been made to Liverca or his attorney that the plea agreement would be changed or even reevaluated. Any prejudice that occurred most likely would have stemmed from Liverca's testimony that he had entered a plea agreement with the Government and that he intended to plead guilty to a felony. The district court, however, cautioned the jury that they could consider the plea agreement only for evaluating the credibility of Liverca, and that they could not consider it in any way as evidence of guilt of the appellants. Moreover, the Government did not touch on the plea agreement on direct examination of Liverca; it was only on cross-examination of Liverca by Wilson's defense counsel that the facts as to the agreement were elicited. Finally, because we have upheld the district court's finding that Dopf did not decide to dismiss Liverca until after the trial, the most that he could have advised appellants is that he might reevaluate Liverca's plea agreement following their trial. Although this information may have been helpful to appellants, it does not constitute exculpatory *Brady* material, the disclosure of which is required before trial. For Dopf to have advised appellants of the possibility that he might reevaluate Liverca's agreement if he determined that the facts warranted such a reevaluation would have been merely an articulation of his general duty. Indeed, Wilson's defense counsel acknowledged the possibility that the Government might change the terms of the plea agreement when he cross-examined Liverca about the agreement.[6] Because we conclude that Dopf acted in good faith in dismissing Liverca, and the appellants were not unduly prejudiced, the district court did not err in denying appellants' motion for a new trial.

6. On cross-examination of Liverca, Wilson's attorney, David Shinkle, asked:
Q. "And you subsequently intend,—Unless the United States of America, through its United

## V. DENIAL OF MOTION FOR MISTRIAL BASED ON ALLEGEDLY IMPROPER CAUTIONARY INSTRUCTION

The next allegation of error that we address, in which Wilson and Milliken join, concerns an allegedly improper cautionary instruction given by the court. Assistant Iowa Attorney General Tam Ormiston testified that he had told Wilson that Robinson was under investigation in Ohio, and that Robinson had been involved in similar advanced-fee, loan-finding schemes for three years without any loans coming through. Prior to Ormiston's testimony, the district court charged the jury that the answer that was about to be given should only be considered in respect to Wilson, and that "it bears only on the issue of whether Defendant Wilson acted with a reckless indifference or disregard for the truth." Immediately following Ormiston's testimony as to his statements to Wilson, the court further instructed the jury:

Now you may not consider that evidence as evidence that Mr. Robinson was, in fact, under investigation. You may not consider it as any evidence that, in fact, he had been involved for three years in this type of program. You may not consider it as any evidence that no loan, in fact, had ever come through. It's considered only for the purpose of letting you know that Mr. Wilson was told this by this witness on July 11, 1980.

Wilson then moved for a mistrial, arguing that the court's statement prior to Ormiston's testimony that it would bear on the issue of whether Wilson acted with a reckless indifference or disregard for the truth prejudiced Wilson. The court denied Wilson's mistrial motion. Ormiston subsequently testified as to making similar representations about Robinson to Milliken, after which the court incorporated by reference the cautionary instruction made with regard to Wilson.

States Attorney, voids the deal that you've made, which is their power, you subsequently intend to plead guilty to a felony, do you not?"
A. "That's right."

Wilson and Milliken[7] now argue that the district court erred in denying the mistrial motion. They contend that the court's instruction impermissibly indicated that the court believed that Ormiston's testimony would show that Wilson and Milliken had acted with reckless indifference or disregard, thus robbing them of their ability to assert their defense of lack of intent to defraud. The proper course of action for the district court, according to Wilson and Milliken, would have been to instruct the jury that Ormiston's testimony was being received against Wilson (and later Milliken) only, without adding to which issue it related.

 Wilson's and Milliken's arguments are not well taken. The district court has discretion in deciding whether to give cautionary instructions. *Stineman v. Fontbonne College*, 664 F.2d 1082, 1087 (8th Cir.1981). The district court also has much discretion in framing jury instructions in general. *United States v. Bednar*, 728 F.2d 1043, 1048 (8th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984); *United States v. McQuarry*, 726 F.2d 401, 402 (8th Cir.1984). When the court does give a limiting instruction when admitting evidence, it should instruct the jury as to the limited purpose for which the evidence is received. *United States v. Bradshaw*, 690 F.2d 704, 709–10 (9th Cir. 1982), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983); *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir.1979). *See also United States v. Russell*, 712 F.2d 1256, 1258 (8th Cir.1983); *United States v. Regner*, 677 F.2d 754, 757 (9th Cir.), *cert. denied*, 459 U.S. 911, 103 S.Ct. 220, 74 L.Ed.2d 175 (1982); *United States v. Morrow*, 537 F.2d 120, 141 (5th Cir.1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). Here the district court gave the cautionary instruc-

tions in question to insure that the jury would not consider the statements made by Ormiston to Wilson and Milliken as proof that Robinson actually was under investigation in Ohio, or that he actually had taken part in loan-finding schemes for three years without closing a loan. The testimony was admitted only as evidence that the warnings were made, and the court so instructed the jury. Contrary to Wilson's and Milliken's argument, the instruction did not reflect a belief on the part of the court that they had acted with reckless indifference or disregard. We conclude, then, that the district court did not abuse its discretion in issuing the cautionary instructions in question.

## VI. DENIAL OF ROBINSON'S MOTION FOR MISTRIAL BASED ON ADMISSION OF TESTIMONY OF ALLEGED COCONSPIRATORS

At trial several witnesses for the Government, specifically many alleged victims of the loan scheme as well as James Liverca and Assistant Iowa Attorneys General Neil Hamilton and Tam Ormiston, testified as to statements made by one of the appellants when at least one of the other appellants was not present. When the first of these witnesses, Neil Hamilton, testified, Robinson objected on hearsay grounds to the admission of any testimony by Hamilton as to statements made by Wilson or Milliken out of the presence of Robinson. The Government contended that the testimony was admissible under Fed.R.Evid. 801(d)(2)(E) as statements made by coconspirators of a party during the course and in furtherance of the conspiracy. The district court allowed the testimony in, subject to the procedures outlined in *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir.1978), for use when the admissibility of a coconspirator's statement is at issue.[8] Under

---

7. The Government asserts that Milliken did not preserve his objection because he did not move for a mistrial after the court's instruction. Milliken contends that a separate objection from him would have been useless because the court had just considered and rejected Wilson's objection, in which Milliken had joined. We need

not consider whether Milliken has preserved his objection in light of our holding that the court did not err in giving the instruction.

8. The guidelines set out in *Bell* are as follows:
 (1) If the prosecutor propounds a question which obviously requires a witness to recount

*Bell,* the out-of-court declaration of an alleged coconspirator is admitted subject to the requirement that the Government prove that the statement was made by a coconspirator during the course and furtherance of the conspiracy. The court then makes a final determination as to the admissibility of the statement at the close of all of the evidence. The court added that subsequent hearsay objections of a similar nature would likewise be treated under the *Bell* procedures.

When it came time for the district court to make its final ruling as to the admissibility of the alleged coconspirators' statements, however, the court essentially ruled that *Bell* did not apply because most of the statements in question were not hearsay.[9] Instead, the court ruled, the statements were admissible as nonhearsay verbal acts. The court noted that hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See* Fed.R. Evid. 801(c). The court determined, however, that the Government did not introduce the statements at issue to prove that they were true, but only to establish that the statements had in fact been made. As such, the court held, the statements were admissible as nonhearsay "verbal acts." *See United States v. Calvert,* 523 F.2d 895, 907 (8th Cir.1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976).

Robinson contends that instead of ruling these statements admissible, the district court should have declared a mistrial under section (d) of the *Bell* guidelines because the Government failed to make the required showing through independent evidence that a conspiracy existed involving Robinson, Wilson, and Milliken. Robinson's argument, however, fails to comprehend that the district court ruled *Bell* inapplicable because the statements at issue were not offered for the truth of the matters asserted. By and large the testimony to which Robinson objects involves representations made by Wilson and Milliken to prospective clients about the loan program. This testimony was not admitted to establish that the representations made were true, but simply that they were made. Robinson makes no argument that the statements were in fact offered for the truth of the matters asserted. We conclude that the district court did not err in admitting this testimony, and therefore Robinson's motion for mistrial was properly denied.

## VII. ROBINSON'S DOUBLE JEOPARDY CLAIM

Robinson also alleges that his prosecution in Iowa violated his Fifth Amendment right against double jeopardy, as well as the Justice Department's *"Petite* policy."[10] He contends that his prosecution and conviction in Iowa were based on the same exact conspiracy to which he had pled

an out-of-court declaration of an alleged coconspirator, the court, upon a timely and appropriate objection by the defendant, may conditionally admit the statement. At the same time, the court should, on the record, caution the parties (a) that the statement is being admitted subject to defendant's objection; (b) that the government will be required to prove by a preponderance of the independent evidence that the statement was made by a coconspirator during the course and in furtherance of the conspiracy; (c) that at the conclusion of all the evidence the court will make an explicit determination for the record regarding the admissibility of the statement; and (d) that if the court determines that the government has failed to carry the burden delineated in (b) above, the court will, upon appropriate motion, declare a mistrial, unless

a cautionary instruction to the jury to disregard the statement would suffice to cure any prejudice.
*Id.* (citing *United States v. Stanchich,* 550 F.2d 1294, 1298 (2d Cir.1977)).

9. Those statements that the court deemed hearsay because they were offered for the truth of the matters asserted were admitted accompanied by cautionary instructions that they were to be considered against the declarants only, as admissions of party opponents under Fed.R. Evid. 801(d)(2).

10. Under the *Petite* policy several offenses arising from a single transaction are alleged and tried together instead of in multiple trials. *See United States v. Valenzuela,* 584 F.2d 374, 376 (10th Cir.1978).

guilty in Ohio. In support of his contention Robinson cites the following similarities between the Ohio and Iowa schemes: (1) the statement by Mr. Dopf, in arguing for the admission in Iowa of Robinson's guilty plea in Ohio, that the conspiracy in Iowa was the same "point-on-point" scheme as in Ohio; (2) all of the victims contracted with him using the same retainer agreement, requesting the same service—the confirmation of the availability of collateral; (3) all of the victims in Ohio and Iowa paid Robinson a $3,500 advance fee; (4) all of the victims were referred to Robinson by their brokers; (5) allegations in both indictments are virtually the same; (6) the indictments charge violations of the same statute; (7) at all times Robinson was operating out of the same geographical location in Dublin, Ohio; (8) the objective of the conspiracy was the same in every case—to obtain advance fees from clients seeking loans; (9) the conspiracy took place continuously from 1979 until 1983, when Robinson was indicted in Ohio and in Iowa. Finally, Robinson asserts that the "totality of the circumstances" test, enunciated by this court in *United States v. Tercero*, 580 F.2d 312, 315 (8th Cir.1978), should be used to determine whether multiple conspiracies exist, instead of the "same evidence" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

■ We agree with Robinson that the "totality of the circumstances" test is the proper one to apply when multiple conspiracies are alleged. *See United States v. Thomas*, 759 F.2d 659, 662 (8th Cir.1985); *Tercero*, 580 F.2d at 315. As we recently stated in *Thomas*,

[t]he following factors are normally considered in determining whether one or two conspiracies are involved: (1) time; (2) persons acting as coconspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicate the nature and the scope of the activity which the government sought to

punish in each case; and (5) places where the events alleged as part of the conspiracy took place.

759 F.2d at 662. After a careful review of these factors in relation to the conspiracies alleged here, we conclude that two agreements, to commit separate crimes, exist.

A brief rundown of the relevant factors will explain our conclusion that two conspiracies exist. First, the Ohio indictment alleges that the conspiracy took place in 1979, whereas the Iowa indictment is based on actions occurring in 1980. Second, in Ohio Robinson was indicted along with his brother Stephen Robinson and Danny A. McLane; in Iowa, Robinson's alleged coconspirators were Troutman, Liverca, Wilson, and Milliken. The third factor, the statutory offense with which the defendant is charged in each indictment, is the same in Ohio and Iowa—mail fraud. As for the fourth factor, concerning the nature and scope of the activity that the Government seeks to punish in each case, although both indictments charge Robinson with conspiring to defraud through misrepresentations about a loan-finding program, differences do exist. Robinson's alleged victims in the scheme charged in Ohio were from seven different jurisdictions, not including Iowa; the Iowa indictment charged the defendants with defrauding fifteen persons in Iowa, Illinois, and Minnesota. Also, in the Ohio scheme Robinson allegedly met each victim personally. In the Iowa conspiracy, however, representations about the loans were made through Robinson's coconspirators. As well, the Ohio indictment charged that Robinson told his prospective clients that major insurance companies would issue the financial guarantees on the loans, whereas in the Iowa scheme the guarantors were to be "AAA" American companies. Finally, as for the fifth factor, location, although Robinson was working out of his office in Dublin, Ohio during 1979 and 1980, the coconspirators through whom he located prospective clients for the Iowa scheme were situated in Iowa.

■ We think the differences in time, coconspirators, victims, methods, and

location are sufficient to discern two separate conspiracies here.[11] *See United States v. West,* 670 F.2d 675, 681 (7th Cir.), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982). That both the Ohio and Iowa indictments charge Robinson with mail fraud in violation of 18 U.S.C. § 1341 is not especially significant. "It is possible to have two different conspiracies to commit exactly the same type of crime." *Thomas,* 759 F.2d at 666. *See also West,* 670 F.2d at 681 ("[T]he guarantee against double jeopardy does not insulate a criminal from punishment for subsequent offenses merely because he chooses to continue committing the same type of crime"). Finally, because we have found that two separate conspiracies exist and thus that more than one criminal transaction took place, Robinson's argument that the Government violated its *Petite* policy is without merit. We note, however, that even a genuine failure by the Government to follow the *Petite* policy does not create a right that a defendant can invoke to bar federal prosecution. *See Thomas,* 759 F.2d at 668; *United States v. Wallace,* 578 F.2d 735, 740 (8th Cir.), *cert. denied,* 439 U.S. 898, 99 S.Ct. 263, 58 L.Ed.2d 246 (1978). Clearly the case here is the same type of scam perpetrated on different victims at different times by different perpetrators with the exception of Robinson and thus constitutes a separate conspiracy.

## VII. ADMISSION OF SUMMARY AND CHARTS

The next assignment of error, in which Robinson, Wilson, and Milliken all join, concerns the admission of Government Exhibits Nos. 21 and 22. Exhibit 21 is a thirteen-page summary worksheet prepared by FBI Agent Don Oxler, listing 105 clients who applied for loans from appellants. The worksheet lists by column the following data for each loan applicant: the date of his contract; the agreed upon fees to be paid Milliken, Wilson, Robinson, or T-Plex; the borrower's gross proceeds (should the loan go through); the date of the collateral instrument letter; and the gross loan amount, the amount which the foreign source actually would have to lend for the individual borrower to receive the "commission" he was seeking. Exhibit 22 consists of three large charts, which contain exactly the same information as in Exhibit 21. Appellants contend that the admission of these exhibits, which came in under Fed.R. Evid. 1006, over their objections was reversible error, because no proper foundation existed for the admission of the underlying documents on which the exhibits were based; the summaries were incomplete and were introduced before all the supporting evidence for them was put into evidence; the underlying documents were not voluminous; and the summaries included all 105 loan applicants instead of just the fifteen named in the indictment.

 Fed.R.Evid. 1006 states as follows:

> The contents of voluminous writings * * which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

The district court has considerable discretion in determining whether to send exhibits to the jury. *See, e.g., United States v. Lewis,* 759 F.2d 1316, 1329 n. 6 (8th Cir. 1985); *United States v. Wilson,* 665 F.2d 825, 829-30 (8th Cir.1981), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982); *United States v. John Bernard Industries,* 589 F.2d 1353, 1359-60 (8th Cir. 1979). We will not reverse the district

---

**11.** Although we hold that two different conspiracies exist here, we think the district court properly admitted Robinson's Ohio conviction into evidence in Iowa as proof of intent, preparation, plan, knowledge, and absence of mistake. Although the Iowa conspiracy was separate from the Ohio conspiracy, the similarity in Robinson's intent to defraud in both schemes, as well as the vehicle—representations about foreign loan sources—used to defraud made his guilty plea in Ohio relevant and material to the prosecution in Iowa.

court's determination on appeal unless it has abused its discretion.

■ We find no abuse of discretion in the admission of the exhibits in question at trial. The record shows that the district court carefully considered the admissibility of the summary, and held a voir dire examination of Agent Oxler out of the presence of the jury. The court even required the Government to change the heading of a column titled "Fees Paid," to "Agreed Upon Fees," because the court was not satisfied that sufficient evidence existed that the fees had in fact been paid. Oxler testified that he prepared the summary from various sources: (1) a list of 105 individuals who had applied for loans through defendant Wilson, which was seized during the execution of a search warrant at Wilson's residence and was admitted as Government Exhibit No. 16; (2) two boxes obtained pursuant to the same search warrant holding ninety files, one for each non-indictment loan applicant named in Exhibit 16, each file containing the same basic contract documents needed to apply for a loan (Government Exhibits Nos. 17-A and 17-B); (3) fifteen files, containing contract documents, pulled from the boxes admitted as Exhibits 17-A and 17-B and corresponding to the fifteen loan applicants named in the indictment (Government Exhibits Nos. 1-15); (4) a computer printout of monthly financial statements for the I.W. Milliken Company for May, June, July, and August 1980 seized pursuant to a search executed at Milliken's office, showing income from consulting fees that matched up substantially by name and amount with the client files in Exhibits 1-15, 17-A, and 17-B, and with client fee agreements for the company introduced as Government Exhibit No. 19 (Government Exhibit 20); and (5) letters from Robinson to Troutman. All of these documents were admitted by the district court prior to Exhibits 21 and 22.

Oxler also testified that he participated in the searches of Wilson's residence and Milliken's office, and that the items seized during those searches remained in his custody and control up until the trial. Further, Oxler testified that prior to the execution of the search warrants he had attended a sales pitch at Wilson's home and had the chance to observe the loan application documents presented to prospective applicants; these documents were the same as those contained in Exhibits 1-15, 17-A and 17-B.

■ We are satisfied that a sufficient foundation was laid for the underlying documents summarized in Exhibits 21 and 22, and that the summary and charts are complete and accurate. Appellants do not contest that they had access to the documents, as required by Rule 1006. Finally, the underlying documents were sufficiently voluminous to warrant summarization under Rule 1006. The summary properly included all 105 applicants, because information regarding all of these individuals was relevant in delineating the enormous scope of the scheme, which would have required obtaining loans in excess of thirty billion dollars to fulfill all of the applicants' requests. It was necessary to show the staggering scope of the scheme in order to establish the patent impossibility of appellants' representations concerning their program. With eight documents for each of the 105 applicants, the "voluminous" requirement of Rule 1006 is easily satisfied; the rule does not require that the underlying documents contain complex calculations to be eligible for summation. In sum, we find no error in the admission of the exhibits.

## IX. DENIAL OF MILLIKEN'S OTHER MOTIONS FOR MISTRIAL

Milliken next contends that the district court erred in failing to grant his other motions for mistrial based on the introduction of evidence relating to prior crimes and bad acts of Robinson. First, Milliken objects to the Government's questioning of its witness, loan applicant Harley Rouse, concerning his knowledge of the status of Robinson's license to practice law. The testimony to which Milliken objects is as follows:

Q. Did you, during the course of your dealings, come to learn additional information concerning Mr. Robinson and the status of his license to practice law?
A. Yes, I did.

\* \* \* \* \* \*

Q. What did you learn concerning the license of Mr. Robinson?

At this point, defense counsel objected and the Government withdrew the question. The court ruled that testimony as to the license revocation would be inadmissible unless the Government could show that defendants had represented to their clients that Robinson was a licensed attorney. Milliken subsequently moved for a mistrial, which the district court denied. He now alleges that the mistrial should have been granted because the questioning impermissibly placed Robinson's license suspension before the jury.

The district court has broad discretion in determining whether an allegedly improper question has so tainted the trial as to require a mistrial. *United States v. Clinton*, 711 F.2d 115, 117 (8th Cir.1983); *United States v. Elliott*, 674 F.2d 754, 755 (8th Cir.1982). Although we disagree with the Government's assertion that if Rouse had testified as to the status of Robinson's license, the testimony would have been admissible, we conclude that the district court did not abuse its discretion in denying a mistrial based on the mere asking of the improper question. *See United States v. Givens*, 712 F.2d 1298, 1301 (8th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1005, 79 L.Ed.2d 237 (1984); *Clinton*, 711 F.2d at 117; *Elliott*, 674 F.2d at 755. Rouse never stated that Robinson's license had been suspended; further, the improper questioning came at a relatively early point in a long trial. *See, e.g., Clinton*, 711 F.2d at 117.

Milliken also argues that his motion for a mistrial, following the Government's cross-examination of Wilson's defense witness Marvin Poppen, should have been granted.

Prior to Poppen's testimony, Assistant Iowa Attorney General Ormiston had testified that he had warned Wilson and Milliken in July 1980 that Robinson was under investigation in Ohio, and that Robinson had been in the loan-finding business for three years without ever closing a loan. Assistant United States Attorney Dopf subsequently cross-examined defense witnesses to determine whether Wilson or Milliken had disclosed the adverse information about Robinson to them before they paid their loan fees. Dopf asked Poppen whether, when Poppen entered the loan program in June 1980, Milliken had told him about the investigation in Ohio, or that Robinson had been in the loan-finding business for three years.[12] Poppen replied in the negative. Milliken moved for a mistrial, claiming that the questions were improper and prejudicial because Milliken himself did not know this information about Robinson until July 1980.

Again, the district court has broad discretion in determining whether a defendant has been so prejudiced as to require a mistrial. *United States v. Panas*, 738 F.2d 278, 285 (8th Cir.1984); *United States v. Reed*, 724 F.2d 677, 679 (8th Cir.1984). Shortly after the improper questioning of Poppen, Robinson's attorney on cross-examination of Poppen highlighted the fact that Poppen had entered the program before Milliken had been given the adverse information about Robinson. This action served to mitigate any prejudice to Milliken from the implication that he had failed intentionally to disclose the information about Robinson to Poppen. Further, Dopf stated to the court that his improper questions to Poppen were inadvertent, and stemmed from his confusion about the dates involved. *Cf. Wilson*, 665 F.2d at 829 (district court's denial of defendant's motion for mistrial proper where Government's improper questioning stemmed from confusion rather than intentional prosecutorial misconduct). Finally, the dis-

---

**12.** Contrary to Milliken's assertion, Dopf did not mention Robinson's license suspension when questioning Poppen.

trict court gave a thorough cautionary instruction to the jury following Poppen's testimony, admonishing them that the improper questions were stricken and should be disregarded because Poppen had joined the program before Milliken received warnings about Robinson. *See United States v. Flemino*, 691 F.2d 1263, 1267 (8th Cir. 1982). In sum, we are satisfied that the district court did not abuse its discretion in determining that Milliken was not so prejudiced as to warrant a mistrial.

## X. SUFFICIENCY OF THE EVIDENCE AGAINST MILLIKEN

Milliken's final contention is that the district court erred in denying his motions for judgment of acquittal because insufficient evidence existed to sustain his guilty verdict. Milliken asserts that he lacked the specific intent required to commit the offenses with which he was charged, as his participation in the loan-finding program was undertaken in complete good faith. He supports this assertion by pointing to the testimony of several of the loan applicants named in the indictment. This testimony includes assertions by one or more of the witnesses that Milliken did not intentionally mislead him; that Milliken believed in the program; that the fee paid to Milliken was not just in connection with the overborrow program but was for a year-long financial package offered by Milliken, an accountant; that Milliken neither guaranteed the program nor represented that any loan had yet closed; and that he had discussed the program with his banker or attorney.

As we have often stated, on review of the district court's denial of a motion for judgment of acquittal, we must consider the evidence in the light most favorable to the Government, giving the Government the benefit of all reasonable inferences that may logically be drawn from the evidence. *See, e.g., United States v. Gleason*, 766 F.2d 1239, 1246 (8th Cir.1985); *United States v. DeLuna*, 763 F.2d at 924. "A motion for acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged." *Brim*, 630 F.2d at 1311 (citations omitted; emphasis added). After reviewing the evidence in the light most favorable to the Government, we conclude that the jury could have reasonably determined that Milliken acted with a reckless disregard of whether the representations being made about the loan-finding program were true.

First, the scheme was simply outlandish; Milliken's suspicion should have been aroused from the start. Indeed, Milliken testified that he was skeptical on first being told about the plan, but incredibly came to believe that the scheme could work. Second, that Milliken took "finder's fees" upfront seems to detract from his alleged good faith belief in the scheme. Although some applicants testified that they paid fees to Milliken for a year-long financial program, others testified that they knew nothing about such a program and understood that the fees were in payment for being referred to Wilson by Milliken. The jury reasonably could have believed the Government's theory that the financial program was a ruse to justify the referral fees. Third, Assistant Iowa Attorney General Hamilton, who attended a sales pitch posing as the attorney for a prospective borrower, testified that Milliken made a representation to the effect that a 99% probability existed that the loans would be funded. Fourth, the record does not reflect that Milliken made any effort to check out Robinson, even after Ormiston disclosed adverse facts about Robinson to Milliken on July 28, 1980. Fifth, once Milliken received this information about Robinson, he failed to disclose it to clients brought in after that date before taking their money. Sixth, Milliken's asserted good faith belief in the loan program seems questionable in light of his failure to sign up for such a wonderful opportunity for himself or a relative. The jury was free to disbelieve Milliken's unsupported, self-serving testimony that he was in the process of making a loan request for himself to fund a bank to loan

money to farmers. Based on all of these factors, we decide that the denial of Milliken's motions for judgment of acquittal was not error.

## XI. CONCLUSION

Because we have carefully considered all of the appellants' arguments and find none to be of merit, we affirm the convictions and judgments entered by the district court.