817 F.2d 1323
 23 Fed. R. Evid. Serv. 875
 UNITED STATES of America, Appellee,
v.
William Jewel SWEENEY, Appellant.
UNITED STATES of America, Appellee,
v.
Jerome TUNSTALL, Appellant.
UNITED STATES of America, Appellee,
v.
Leroy TUNSTALL, Jr., Appellant.
UNITED STATES of America, Appellee,
v.
Maryland TUNSTALL, Appellant.
 Nos. 86-1453 to 86-1456.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 14, 1987.
Decided May 6, 1987.
Rehearing Denied June 2, 1987.
Rehearing Denied in No. 86-1453 June 10, 1987.
Rehearing Denied in No. 86-1454 June 19, 1987.
 
 James Ochs, Clayton, Mo., for appellants L. Tunstall and M. Tunstall.
 Sally Heller, St. Louis, Mo., for appellant Sweeney.
 Priscilla Gunn, St. Louis, Mo., for appellant J. Tunstall.
 Debra Herzog, St. Louis, Mo., for appellee.
 Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.
 BRIGHT, Senior Circuit Judge.
 
 
 1
 William Jewel Sweeney, Maryland Tunstall, Leroy Tunstall, Jr., and Jerome Tunstall appeal their convictions for conspiracy to manufacture and distribute phencyclindine (PCP). Maryland Tunstall also appeals his convictions on two counts of possession of piperidine with intent to manufacture PCP. Leroy Tunstall appeals his conviction on one count of possession of piperidine. For the reasons discussed below, we affirm the convictions.
 
 I. BACKGROUND
 
 2
 In October 1984, Maryland Tunstall met with Richard Stevens in St. Louis and told Stevens that he was interested in making PCP, but needed the chemical names of the substances required for manufacture. Stevens then called Frank Glover[1] in California and introduced him to Tunstall over the phone. During this conversation, Tunstall and Glover agreed to manufacture PCP in California. Tunstall agreed to provide piperidine, a chemical precursor to PCP, and Glover agreed to orchestrate the manufacturing process.
 
 
 3
 In December, Stevens, Jerome and Leroy Tunstall travelled to California by bus with five gallon jugs of what they thought was piperidine. Maryland Tunstall paid for their bus tickets. Glover met the three at the bus station and took them to his house.
 
 
 4
 At Glover's residence, they met William Sweeney, who examined the chemical and determined that it was not piperidine. Sweeney then called Maryland Tunstall in St. Louis and told him that the wrong chemical had been sent. Tunstall then told Stevens over the phone that he would order some piperidine and that Stevens would be paid $10,000 for his trips to California.
 
 
 5
 Stevens and the Tunstalls returned to St. Louis without having made any PCP. Several days later, they returned to California with suitcases containing bottles of piperidine. Again, Maryland Tunstall paid for the bus tickets and Glover met them in California. Sweeney examined the liquid and determined that it was the correct chemical.
 
 
 6
 Glover, Sweeney and Maryland Tunstall then discussed the quantity of PCP they could make from the piperidine in Glover's garage. Glover then took Stevens to the Lazy J Ranch in Perris, California where they met an unidentified individual who agreed to make the PCP there. Glover and Stevens returned to the ranch several days later and learned that Sweeney needed money to buy additional chemicals. Glover agreed to call Maryland Tunstall for more money. It was also agreed that Sweeney, Glover, Stevens, and Maryland, Leroy and Jerome Tunstall were to share in the PCP.
 
 
 7
 Leroy and Jerome Tunstall returned to St. Louis with a gallon of PCP. Stevens stayed in California until January when he returned to St. Louis with three gallons of PCP which he delivered to Maryland Tunstall. In St. Louis, Stevens contacted potential buyers for the PCP, but then ceased communication with Maryland Tunstall after a disagreement over money. On February 17, 1985, a police officer stopped a vehicle in which Jerome Tunstall was a passenger. The officer found two one-ounce bottles on Jerome, as well as a jar of PCP in a brown paper bag which Jerome had attempted to discard.
 
 
 8
 The Government introduced the above stated evidence at trial through the testimony of Stevens, who was indicted along with the other participants in the conspiracy. The Government also corroborated Stevens' testimony with documentary evidence and other testimony. The jury convicted all five defendants of conspiracy to manufacture and distribute PCP. The jury also found Maryland Tunstall guilty of two counts of possession of piperidine with intent to manufacture PCP. In addition, Leroy Tunstall was convicted of possession of piperidine. The jury acquitted Jerome Tunstall of the same charge.
 
 II. DISCUSSION
 A. Severance
 
 9
 All the appellants claim that the district court[2] erred when it refused to sever their trials. They assert that the jury could not compartmentalize the evidence against the various defendants and thus evidence against one defendant spilled over to another defendant. Accordingly, the appellants assert that they were prejudiced because the complicated evidence confused the jury.
 
 
 10
 Fed.R.Crim.P. 8(b) provides that two or more defendants may be charged in the same indictment "if they are alleged to have participated in the same act or transaction * * *." Rule 14 provides that the district court may sever the defendants' trials if it appears that a defendant or the government is prejudiced by the joinder. Fed.R.Crim.P. 14. The district court's denial of a motion to sever may be overturned only upon showing that an abuse of discretion occurred. United States v. Lueth, 807 F.2d 719, 730-31 (8th Cir.1986). Whether the defendants were prejudiced depends upon whether the jury could compartmentalize the evidence against each defendant. Id. at 731.
 
 
 11
 Maryland Tunstall contends that no evidence existed to show his intent to manufacture except the evidence presented against the other defendants. Jerome Tunstall argues that he suffered prejudice because he could not present the testimony of his codefendants, who chose not to testify at trial. Leroy Tunstall asserts that severance should have been granted because numerous pieces of evidence were admitted at trial that were irrelevant to him and would have been inadmissible in a separate trial. Finally, William Sweeney contends that he was prejudiced when Jerome Tunstall's attorney asked government witness Walter Kyle about his motive for testifying. Kyle replied that Sweeney had allegedly raped Kyle's niece some time previously.
 
 
 12
 Generally, persons charged with conspiracy are to be tried together. United States v. Robinson, 774 F.2d 261, 265 (8th Cir.1984). The admission of evidence relevant to one defendant, but not another, does not constitute grounds for severance. Robinson, 774 F.2d at 267; United States v. Helmet, 769 F.2d 1306, 1322 (8th Cir.1985). Furthermore, no error occurs when a co-defendant chooses not to testify unless it can be shown that the co-defendant would have testified and that the testimony would be exculpatory. Robinson, 774 F.2d at 267.
 
 
 13
 In the present case, Maryland and Leroy Tunstall's arguments are without merit. That the evidence against co-defendants did not pertain to Maryland and Leroy does not require severance, and the district court did not abuse its discretion in rejecting this contention. Jerome Tunstall's argument that he was denied the testimony of his co-defendants is similarly without merit. He has made no showing that his co-defendants would have testified on his behalf or that their testimony would have exculpated him.
 
 
 14
 William Sweeney's allegation of error is of more serious import. The witness Kyle's representation that Sweeney had raped Kyle's niece is certainly prejudicial. The district court, however, gave the jury a curative instruction, advising that this testimony could be considered only in connection with Kyle's credibility. Furthermore, the court also instructed the jury that Kyle's testimony did not show that the rape actually occurred and that the jury could not consider any crimes not charged in the indictment. These instructions, combined with the substantial evidence against Sweeney, show that if any error occurred, it was harmless and does not require reversal. See United States v. Sopczak, 742 F.2d 1119, 1123 (8th Cir.1984); United States v. Wagoner, 713 F.2d 1371, 1376 (8th Cir.1983).
 
 B. Admission of Taped Conversations
 
 15
 Sweeney argues that the district court erred in admitting taped conversations of Sweeney negotiating sales of PCP with government witness Kyle. He contends that those conversations occurred at a time later than the charged conspiracy and thus those conversations are evidence of a separate conspiracy. Because the evidence establishes multiple conspiracies, when only one was alleged, Sweeney argues that he is entitled to reversal of his conviction for conspiracy.
 
 
 16
 We disagree. Sweeney's attempts to sell PCP are simply overt acts taken in furtherance of the conspiracy. Kyle acted as a government informant and thus could not be a co-conspirator in any "second" conspiracy.
 
 C. Jerome Tunstall's Prior Conviction
 
 17
 Jerome Tunstall argues that the district court erred when it denied his motion in limine to suppress evidence of his prior convictions. Tunstall, however, did not testify at trial. Accordingly, he has waived his objection to the district court's ruling. Luce v. United States, 469 U.S. 38, 43, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1985).
 
 
 18
 Jerome Tunstall, who did not testify, also alleges that, by indirection, the prosecutor improperly left the jury with knowledge of his prior criminal record. During cross-examination of an FBI agent, counsel for Maryland and Leroy Tunstall asked if the Tunstalls had any criminal convictions. The prosecutor then requested a clarification of the question so that it pertained only to Maryland and Leroy Tunstall. Jerome Tunstall argues that the prosecutor's clarification improperly left the jury with the impression that he had been previously convicted and the district court erred when it refused to grant a mistrial after this exchange.
 
 
 19
 We do not agree that the prosecutor's action constitutes reversible error. The prosecutor limited the question in order to avoid an answer that would reveal Jerome Tunstall's previous conviction. The sequence of questioning failed to establish anything relative to Jerome Tunstall. Furthermore, this one question did not influence the jury's verdict, as is evidenced by Jerome's acquittal on another count.
 
 D. Jerome Tunstall's Possession of PCP
 
 20
 Leroy, Maryland and Jerome Tunstall challenge the admission into evidence of Jerome's arrest for possession of PCP and the attendant circumstances. Leroy and Maryland contend that the evidence impermissibly allowed the jury to infer an intent to distribute PCP on their part. Jerome contends that the possession was a separate act that occurred after the conspiracy, the PCP was never shown to be made from piperidine, and the Government failed to prove that the quantity seized was consistent with distribution and not personal use.
 
 
 21
 We do not agree with these contentions. Richard Stevens' testimony sufficiently proved Leroy and Maryland's intent to distribute. Secondly, Jerome's arrest occurred during the course of the conspiracy. Finally, the Government produced evidence showing the amount of PCP that would be consistent with personal usage. The jar of PCP was in plain view of the jury and accordingly the jury members could judge for themselves whether the amount in the jar was consistent with personal use or with distribution.
 
 III. CONCLUSION
 
 22
 We have carefully examined appellants' other arguments and we have determined them to be without merit. Accordingly, the convictions are affirmed.
 
 
 
 [1]
 Glover was tried as a co-defendant with the appellants. He has, however, withdrawn his appeal
 
 
 [2]
 The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri