**UNITED STATES of America, Appellee,**

v.

**Michael WAGNER, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Robert S. WAGNER a/k/a John Robert Wagner, Appellant.**

**Nos. 88–2613, 88–2614.**

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1989.

Decided Sept. 8, 1989.

Rehearing Denied Oct. 17, 1989.

Jeff H. Watson, Springdale, Ark., for Michael Wagner.

Stephen L. Taylor, Springdale, Ark., for Robert Wagner.

William Cromwell, Fort Smith, Ark., for appellee.

Before BOWMAN and WOLLMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

BOWMAN, Circuit Judge.

Robert and Michael Wagner appeal their convictions for criminal activity involving methamphetamine. We affirm.

The Wagner brothers were arrested May 6, 1988, after an eighteen-month investigation. In late 1987, Robert Wagner purchased a large quantity of precursor chemicals, which were later seized in New Mexico by Drug Enforcement Administration officials. Robert Wagner, on behalf of W & W Painting, again ordered precursor chemicals and laboratory glassware on March 16, 1988, which were delivered to him by United Parcel Service at a rural route address in Fayetteville, Arkansas. On April 5, 1988, Robert Wagner used an alias to order more glassware and chemicals. Robert picked up those items at a Yellow Freight depot in Springdale, Arkansas on May 3, 1988, again using an alias. Drug task force personnel followed Robert from that depot to Michael's leased residence at 27 East Rock Street in Fayetteville. They observed the chemicals and glassware being unloaded from a truck and taken into the residence. On May 5, 1988, Robert ordered a glass adaptor, necessary for the manufacture of methamphetamine,

and requested that it be delivered the next day by UPS to the Rock Street address.

The May 6, 1988 delivery of the glass adaptor was made by a UPS delivery man and a state police officer, Doug McAllister, who posed as a UPS employee. The two men were met in the yard by Michael, who agreed to accept the C.O.D. delivery. Michael entered the house to write a check in payment for the delivery, and the two men followed. Inside the house, Officer McAllister detected a strong chemical odor that he associated with the manufacture of methamphetamine. Following the departure of the delivery men, Robert and another brother, Paul, were observed loading into a pickup truck a yellow footlocker and the package that had just been delivered, and driving away from the house.

Both the Rock Street residence and the truck were searched that same day pursuant to search warrants issued by an Arkansas state court judge, resulting in the seizure of chemicals, glassware, a one-page "recipe" for the manufacture of methamphetamine, and a firearm. In addition to Michael and Robert, police also arrested Paul Wagner and Michael's secretary, Margaret Snider. All four defendants were tried together on a one-count indictment charging that they "together with others, and aiding and abetting each other, knowingly and intentionally did attempt to manufacture methamphetamine" in violation of 21 U.S.C. §§ 841(a)(1), 846 (1982), and 18 U.S.C. § 2 (1982). After the government had presented its case, the District Court[1] entered a judgment of acquittal in favor of Margaret Snider. The case against the three Wagner brothers was submitted to the jury, which returned verdicts of guilty against Michael and Robert and of not guilty as to Paul Wagner. These appeals followed.

## I.

■ Michael and Robert Wagner first argue that the evidence seized in the May 6, 1988 searches of the house and truck should have been suppressed. They contend that the search warrants were issued upon information gleaned from Officer McAllister's initial warrantless entry into the house, gained by his deception in posing as a UPS employee, and that because the legality of the search warrants was thereby tainted, the evidence seized should have been suppressed as the fruit of an illegal search. We find no merit in this argument.

First, we agree with the District Court that the search warrants were supported by ample probable cause apart from Officer McAllister's detection of a strong chemical smell inside Michael's house, which was the sole additional information gained by his entry into the house. The four-page affidavit upon which the warrants were issued outlined in detail the eighteen-month investigation that had led to the controlled delivery made earlier that morning, and traced the route of the chemicals and glassware to the house on Rock Street.[2] We hold that the information in the affidavit, even omitting Officer McAllister's detection of a strong chemical smell inside the house, provided the issuing judge a substantial basis for concluding that probable cause existed to believe that contraband or evidence of a crime would be found in the house on Rock Street and later in the pickup truck. See Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

■ Second, even if the probable cause determination had depended on the information gleaned from Officer McAllister's entry, we would not find the warrant constitutionally infirm. In Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), the Supreme Court held that the Fourth Amendment does not categorically prohibit a law enforcement agent

1. The Honorable H. Franklin Waters, Chief United States District Judge for the Western District of Arkansas.

2. The same four-page affidavit, plus a page describing the truck and the yellow footlocker, was used a few hours later to obtain the search warrant for the truck in which the yellow footlocker containing chemicals and glassware was found.

from gaining entry into private homes by misrepresenting his identity. As we explained in *United States v. Shigemura*, 682 F.2d 699 (8th Cir.1982), *cert. denied*, 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962 (1983), one who consents to an undercover agent's entry into his house "has no legally enforceable expectation that [the agent] is not an undercover police officer." *Id.* at 706.

■ After reviewing the relevant law with regard to warrantless entries gained by ruse, the District Court concluded that Officer McAllister's entry did not violate the Fourth Amendment. *See* Criminal Suppression Hearing Transcript at 52–53. That conclusion was based on an implicit finding, which on this record we cannot say is clearly erroneous, that Michael Wagner, believing Officer McAllister to be a delivery person, consented to his entry. *See United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cir.1975) (consent need not be expressed in words; it may be inferred from a person's conduct under the circumstances).[3] Accordingly, we conclude that the warrants were not tainted by any illegality and that the District Court therefore properly declined to suppress the evidence seized in the May 6, 1988 searches.

## II.

Both appellants argue that the evidence introduced at trial was insufficient to support their convictions. As a corollary to this argument, appellants contend that the District Court failed to instruct the jury properly as to what must be proved to convict on an attempt charge. We address first the argument challenging the District Court's instructions, and then turn to an examination of the evidence supporting the convictions.

■ In Instruction No. 10, the District Court articulated the elements of attempted manufacture of methamphetamine as:

One, that a defendant intended to commit the crime of manufacture of methamphetamine; and,

Two, that on or about May 6, 1988, a defendant intentionally carried out some act which was a substantial step toward the commission of the crime of manufacturing methamphetamine.

The Court's Instruction No. 11 explained the "substantial step" element:

A substantial step, as used in the previous instruction, must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime. In order for behavior to be punishable as an attempt, it need not be incompatible with innocence, yet it must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute. Crimes such as attempt to manufacture methamphetamine require a defendant to engage in numerous preliminary steps which brand the enterprise as criminal.

---

**3.** Officer McAllister testified that he and the UPS employee followed Michael into the house through a door that was "all the way open," after Michael had indicated his willingness to accept delivery of the package. When they were just inside, Michael asked who the men were and who they worked for, in response to which the UPS man pointed to the truck outside. *See* Suppression Hearing Transcript at 32. Robert argues that until that point no consent was given, and that since Officer McAllister undoubtedly detected the chemical odor immediately upon entry, that information was illegally obtained. We think, however, that the District Court did not err in finding consent to enter. We note that surveillance of the house indicated that the occupants of the house generally carefully checked out callers before allowing them to enter. *Id.* at 11. In contrast, Michael's conduct implied that he wished the men to follow him inside so that he could pay for the package. *See Turbyfill*, 525 F.2d at 59 ("action of [occupant] in the opening of the door and stepping back constituted an implied invitation to enter").

We also reject Robert Wagner's argument that Officer McAllister's use of his own sense of smell in detecting the odor is comparable to the use of trained dogs to sniff for drugs. *Cf. United States v. Thomas*, 757 F.2d 1359, 1366–67 (2d Cir.), *cert. denied*, 474 U.S. 819, 106 S.Ct. 66, 67, 88 L.Ed.2d 54 (1985), 479 U.S. 818, 107 S.Ct. 78, 93 L.Ed.2d 34 (1986) (condemning the use of a trained dog to sniff for drugs outside a private home to which police had not gained lawful access).

Appellants complain that the District Court should have defined the second element of attempt as "conduct constituting a 'substantial step' towards the commission of the substantive offense which strongly corroborates the actor's criminal intent." *See United States v. Joyce*, 693 F.2d 838, 841 (8th Cir.1982). Appellants contend that the omission of the "strongly corroborates" language significantly changes the character of the crime, and that if the instruction had included that language the jury here probably would not have reached guilty verdicts. We disagree.

■ A criminal defendant "is not entitled to a particularly worded instruction where the instructions given by the trial judge adequately and correctly cover the substance of the requested instruction." *United States v. Manning*, 618 F.2d 45, 48 (8th Cir.1980). Moreover, the District Court has "wide discretion in determining the appropriate jury instructions," and its choices of particular instructions may be reversed only for an abuse of discretion. *See Shigemura*, 682 F.2d at 704–05. The Instruction 11 language requiring the jury to find beyond a reasonable doubt that the step was taken "in accordance with a design to violate the statute" conveys substantially the same idea as the "strongly corroborates" language that appellants requested.[4] Moreover, any linguistic formulation of the "substantial step" element serves merely as a guidepost: "whether a defendant's conduct amounts to a 'substantial step' is necessarily dependent on the particular factual circumstances in the case at hand." *United States v. Mazzella*, 768 F.2d 235, 240 (8th Cir.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). Considering the particular circumstances of the present case, we are convinced that the instructions given by the District Court adequately and correctly articulated the law, and afforded defense counsel the opportunity to advance their

theory to the jury that no substantial step toward manufacture had been taken. *See United States v. Kouba*, 822 F.2d 768, 771–72 (8th Cir.1987).

■ We also hold that the evidence adduced at trial was sufficient to sustain these convictions. The evidence showed that Robert Wagner ordered glassware and precursor chemicals; that Robert used an alias to pick up a second order of glassware and chemicals and then brought those items to Michael's house; that another delivery of similar materials was made to that house; that Michael, acting nervous and confused (Tr. 45, 58), paid for and accepted delivery of a glass adaptor necessary for the manufacture of methamphetamine; that a strange chemical odor was detected at the time of that delivery; that drums of chemicals with their labels and warning tags removed were in the garage of Michael's house; that Michael directed that a yellow footlocker, later found to contain glassware, chemicals, a heating mantel, a triple balance scale, and a formula for making methamphetamine, be loaded onto a pickup truck; that both Robert and Michael had keys to open the yellow footlocker; and that with all of these materials, the Wagners could have produced 3.7 pounds of methamphetamine.

In evaluating the sufficiency of evidence to support a conviction, we examine the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences, and reverse only if a reasonable jury could not have found guilt beyond a reasonable doubt. *United States v. Felix*, 867 F.2d 1068, 1071 (8th Cir.1989). This Court previously has held that conduct consisting of ordering, receiving, and possessing the chemicals and equipment necessary to manufacture methamphetamine constituted a "substantial step" toward manufacturing

---

4. Appellants' argument stands the definition of attempt on its head: Robert's brief argues that "[t]he correct instruction which should have included the strongly corroborative language would require not only an action by any of the defendants, but also an action which would be a substantial indication of their criminal intent."

Brief for Robert Wagner at 39. Yet the crime of attempt requires a separate finding of intent—*see* Instruction No. 10, *supra*. Thus the omission of the "strongly corroborates" language does not, as appellants apparently fear, erase the intent requirement from the definition of the attempt crime.

methamphetamine. *Mazzella*, 768 F.2d at 240. Appellants seek to distinguish *Mazzella* by pointing out that there the defendant had admitted his intention to manufacture methamphetamine. But the absence of such an express indication of intent in this case is not fatal. As with other elements of crimes, intent may be shown by circumstantial evidence. *See, e.g., United States v. Rodriguez*, 812 F.2d 414, 416 (8th Cir.1987). The evidence outlined above, viewed in the light most favorable to the government, both justifies an inference of criminal intent and adequately supports the government's contention that a substantial step was taken. *See Felix*, 867 F.2d at 1071. We hold that the government adduced sufficient evidence to convict appellants of attempt to manufacture methamphetamine.

As evidenced by the arguments in their briefs, appellants appear to believe that the jury found only Robert Wagner guilty of attempt to manufacture methamphetamine, and that the jury found Michael Wagner guilty of aiding and abetting Robert Wagner's attempt. From this premise, Michael Wagner proceeds to argue that the evidence does not support such a conviction. Although the verdict forms used by the jury are so constructed that it is not possible to ascertain that Michael was found guilty only of aiding and abetting Robert's attempt, appellants' surmise in this regard is at least plausible.

■ We therefore have carefully considered Michael Wagner's argument and we hold that the evidence was sufficient to convict him of aiding and abetting his brother's attempt to manufacture methamphetamine. The essential elements of aiding and abetting are "1) that the defendant associated himself with the unlawful venture; 2) that he participated in it as something he wished to bring about; and 3) that he sought by his action to make it succeed." *Rodriguez*, 812 F.2d at 416. *Accord United States v. LaGuardia*, 774 F.2d 317, 319 (8th Cir.1985). We are satisfied that the evidence adduced at trial, including the evidence that Michael signed and paid for the C.O.D. package, that

drums of chemicals were found in his garage, and that he supervised the loading of chemicals and equipment onto the truck, was such that a reasonable jury could have found him guilty beyond a reasonable doubt.

The government's evidence was sufficient to warrant the submission of the case to the jury and to support the jury's verdict finding appellants guilty as charged. Thus, the District Court properly denied the motions of Michael and Robert Wagner for judgment of acquittal.

### III.

Both Michael and Robert Wagner challenge the constitutionality of the Sentencing Guidelines under which they were sentenced, arguing that principles of delegation and separation of powers were violated by the Guidelines' promulgation. Those arguments definitively were rejected by the Supreme Court in *Mistretta v. United States*, — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Accordingly, we turn to the Wagners' arguments that the Guidelines were misapplied in calculating their terms of imprisonment.

■ Robert Wagner was sentenced to 210 months imprisonment, and Michael Wagner to 240 months imprisonment. These sentences were calculated by the District Court using the estimate of the expert witness at trial that given the chemicals and glassware seized, defendants were capable of producing 3.7 pounds of methamphetamine. Defendants object that the District Court "should have taken the estimate of 3.7 pounds as a maximum amount that could have been produced and chosen the lower original estimate of two pounds as a more reasonable approximate amount of product given appellant's inexperience and given the fact that no manufacture was ever undertaken." Brief for Robert Wagner at 44–45. *See also* Brief for Michael Wagner at 40–41. We disagree.

Section 2D1.4 of the Guidelines provides that "If a defendant is convicted of participating in an incomplete conspiracy or an

attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed." At trial, a chemist who is an expert in the field testified that the appellants' set-up would enable them to produce 3.7 pounds of methamphetamine. We think the District Court correctly used that estimated amount of methamphetamine, the production of which was the "object of the attempt" as discussed in Section 2D1.4, in determining the base offense level for appellants' attempted manufacture.

■■■■ Both Wagner brothers also challenge the District Court's decision to increase their base offense levels by two levels under Section 3B1.1(c), due to their respective roles in the offense. We believe that the upward adjustment was warranted for both appellants. Michael Wagner, who supervised the loading of the glassware and chemicals onto the truck and lived at the site where the equipment for manufacture was accumulated, certainly could be considered an "organizer, leader, manager, or supervisor," under Section 3B1.1(c). Robert Wagner's ordering and picking up of the chemicals and equipment branded him as the one most responsible for committing the offense. *See* Guidelines § 3B1.1 Commentary. Contrary to Robert's assertion that the upward adjustment was based on the District Court's belief that the operation was extensive in that 3.7 pounds of methamphetamine could have been produced, the Court made clear that it was rejecting the government's request for a four-level upward adjustment under Section 3B1.1(a). *See* Transcript of Sentencing Proceedings of Robert S. Wagner at 12–13; Transcript of Sentencing Proceedings of Michael Wagner at 16–17.

■■■■ Michael Wagner also challenges the District Court's upward adjustment for possession of a firearm during the commission of the offense, *see* Guidelines § 2D1.1(b)(1), arguing that the government failed to establish at trial that Michael possessed the gun, which police found on a desk during the search of the house he had leased and in which he resided. This en-hancement "reflects the increased danger of violence when drug traffickers possess weapons" and "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Guidelines § 2D1.1 Application Note 3. *Accord United States v. White,* 875 F.2d 427, 433 (4th Cir.1989). Here, the weapon was a handgun kept near the front entry to the house. Thus, the weapon was present and the connection to the offense not clearly improbable, and the fact that actual possession was not proved does not render the Section inapplicable. *Cf. United States v. Matra,* 841 F.2d 837, 841 (8th Cir.1988) (constructive possession may exist when a person does not have actual possession but knowingly has the power and intention to exercise dominion and control over an object, either directly or through others).

■■■ Finally, Michael objects to the two-level upward adjustment for obstruction of justice, which the District Court based on Michael's untruthful testimony at trial. Michael contends that his testimony was "essentially his denial of guilt" and that the adjustment punishes him for exercising his constitutional right to testify. *See* Brief for Michael Wagner at 41–42. Although Section 3C1.1 was "not intended to punish a defendant for the exercise of a constitutional right" and a "denial of guilt is not a basis for application" of that Section, *see* Guidelines § 3C1.1 Application Note 3, testifying untruthfully concerning a material fact during a trial may provide a basis for applying the adjustment. *See* Guidelines § 3C1.1 Commentary. Michael testified, in contradiction to the testimony of law enforcement officers, that the key opening the yellow footlocker was not found on his person, that he had never seen the yellow footlocker, and that he did not know that the chemicals were being stored at his house. Based on this testimony, which in keeping with the jury verdict the District Court deemed to be untruthful, we conclude that the adjustment for obstruction of justice was not unlawfully applied.

We find no error in the District Court's application of the Guidelines as to the sentences of either Robert or Michael Wagner.

## IV.

■ Robert Wagner contends that the District Court should have declared a mistrial when, during closing argument, the government attorney made an apparently inadvertent reference to Robert's failure to testify at trial. As the government attorney was reviewing the evidence at trial she said the following:

Look at the picture. Michael said he had never seen this trunk until yesterday during court. Look at government's Exhibit 12 housed things in the truck [sic]. The trunk with the yellow top would be pretty evident.

Paul said he didn't know how it got in there. He denied loading it. But it got in there. They were all there that day. Use your common sense. We, the defense, when you think about the credibility of the witnesses and who had something to gain or lose, think about the defenses of Robert—excuse me—Paul and Michael Wagner and their testimony and about their unexplanation of so many things; the failure to explain.

Decide who's telling the truth in this case and who is not. We would ask that you look at the evidence as to each defendant, consider it, use your common sense and find the defendants guilty as charged in the indictment.

Trial Transcript at 239–40.

It is well-established that the Fifth Amendment privilege against self-incrimination is violated by a prosecutor's direct comment upon a defendant's failure to testify. *See Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965); *United States v. Kragness,* 830 F.2d 842, 868 (8th Cir.1987). Other references may constitute error "when the statements either (1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally and necessarily take them as a comment on the defendant's failure to testify." *United States v. Durant,* 730 F.2d 1180, 1184 (8th Cir.), *cert. denied,* 469 U.S. 843, 105 S.Ct. 149, 83 L.Ed.2d 87, 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 91 (1984). *Accord United States v. Montgomery,* 819 F.2d 847, 853 (8th Cir. 1987). "Both tests require attention to the context of the prosecutor's remarks—the argument itself, and the larger context of the evidence introduced at trial." *Durant,* 730 F.2d at 1184.

■ The prosecutor's reference here appears to have been an inadvertent confusion of the names of the three Wagner brothers made in the midst of her recap of the testimony of the two brothers who did take the stand at trial, and was quickly remedied. The reference did not manifest an intent on the part of the prosecutor to call attention to Robert's failure to testify. *See* Trial Transcript at 241. Nor do we believe that the jury would "naturally and necessarily" take the reference as such a comment. We hold that there was no constitutional error [5] and that the District Court properly declined to declare a mistrial.[6]

## V.

■ The remaining arguments made by Michael Wagner warrant only brief discussion. First, Michael's contention that the District Court erred in admitting photographs of certain chemicals seized during the searches is without merit. Though the government inadvertently had omitted those photographs from its initial response to Wagner's request for discovery, all the defense attorneys were aware that the depicted chemicals had been seized during the searches and all had been shown the photo-

---

**5.** We note that even if there were here constitutional error of this type, we still would not reverse if the error were harmless beyond a reasonable doubt. *See Catches v. United States,* 582 F.2d 453, 458 n. 9 (8th Cir.1978); *see generally Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**6.** We reject Robert's argument that because the District Court candidly admitted that it had not heard the prosecutor's statement when it was made, it was compelled to declare a mistrial. As discussed in the text of this opinion, the inadvertent reference to Robert was insignificant in the context of the argument and in the larger context of the trial.

graphs before trial. Moreover, the District Court offered to recess the trial to allow defense counsel to further prepare in any way they wished. We find no abuse of discretion.

Second, we find no error in the District Court's refusal to sever Michael's trial from that of the other defendants. The initial joinder was proper under Fed.R. Crim.P. 8(b), since the indictment alleged that all the defendants participated in the same series of acts or transactions constituting an offense. And Michael has not carried the heavy burden of showing "real prejudice," which is necessary to establish that a trial court abused its discretion by refusing to grant a severance. *See, e.g., United States v. Jones,* 880 F.2d 55, 63 (8th Cir.1989); *United States v. Adkins,* 842 F.2d 210, 212 (8th Cir.1988). Michael has not demonstrated that the jurors were unable to compartmentalize the evidence against each of the Wagner brothers (*see Jones* at 63; *Adkins,* 842 F.2d at 212); to the contrary, the fact that the jurors acquitted one of the brothers demonstrates that they in fact considered the evidence against each defendant separately. Michael's assertion that Robert might have testified at a separate trial of Michael also does not warrant reversal, since he has not shown either that Robert was likely to testify or that Robert's testimony would exculpate him. *See United States v. Sweeney,* 817 F.2d 1323, 1326 (8th Cir.), *cert. denied,* 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 141 (1987); *United States v. Robinson,* 774 F.2d 261, 267 (8th Cir.1985). As in the joint trial, Robert might have chosen to invoke his Fifth Amendment right not to testify at a separate trial of Michael. *See Robinson,* 774 F.2d at 267.

Finally, we reject Michael's argument that the District Court should have declared a mistrial because of the "prejudicial effect of the government's attempt to introduce hypodermic needles and their use in ingesting methamphetamine." Brief for

Michael Wagner at 37. When defense counsel objected to references to hypodermic needles made during the direct examination of Officer McAllister, the District Court sustained the objection, gave the jury a cautionary instruction, and polled each juror to ensure that the jury would disregard any reference to the needles. Since there is nothing in the record indicating that the jury disregarded the Court's instruction or their own affirmative promises to heed that instruction, we conclude that the District Court's action cured any prejudice that the references might have created. *See United States v. West,* 878 F.2d 1111, 1113 (8th Cir.1989).

Having considered each of appellants' arguments, except those raised in Michael Wagner's pro se brief,[7] we find no basis for reversing the convictions of either Michael or Robert Wagner or for setting aside their sentences. Accordingly, the judgments of the District Court are AFFIRMED.

---

7. The issues raised in Michael Wagner's eighty-page pro se brief, insofar as they differ from the issues raised by counsel on Michael Wagner's behalf, have not been presented to the District Court, at least not in the form in which he presents them here, and require fact finding that we, as an appellate court, are not equipped to perform. To the extent the issues raised in the pro se brief are not decided by this opinion, they may be presented to the District Court by filing a petition pursuant to 28 U.S.C. § 2255. We accordingly do not reach the merits of those issues. *See United States v. Gray,* 464 F.2d 632, 634 n. 1 (8th Cir.1972).